## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 4:06-CR-00023-2 |
| | ) | |
| VS. | ) | MATTICE/CARTER |
| | ) | |
| RICHARD MUNOZ | ) | |

## SUPPLEMENTAL POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR NEW TRIAL

Now comes the defendant, Richard Munoz, by and through his counsel of record, Martha

M. Hall, and files the instant supplemental points and authorities in support of the previously

filed motion for new trial, pursuant to Fed.R.Crim.P. 33.

## I.

## <u>GOVERNING LEGAL STANDARDS</u>

At the end of the last hearing on this motion, this Court's most central concern was the

legal standard governing Rule 33 motions.  In fact, the Court asked if it could "sit as a 13th juror"

and review all the evidence, including the credibility of the witnesses and the weight of the

evidence.  (M.H. 129-130).[1]  The answer is that this Court can and does sit as a thirteenth juror in

a motion for new trial pursuant to Rule 33(a).  <u>United States v. Solorio</u>, 337 F.3d 580, 589, fn. 6

(6th Cir. 2003), citing <u>united States v. Ashworth</u>, 836 F.2d 260, 266 (6th Cir. 1988).   Here, Mr.

Munoz's primary and most compelling argument is that he should be granted a new trial "in the

interests of justice" under Rule 33(a).   This is not a motion for acquittal under Rule 29.   Nor this

---

[1]Cites to the hearing on June 21 will be referenced as "M.H."; cites to the trial transcript
will be referenced as "R.T." "App" refers to the Appendix filed with the initial motion on May 8,
2007, "App. B" refers to the Appendix attached to this motion. "C.R."refers to the clerk's record.

1

particular motion a motion for new trial due to newly discovered evidence under section © of Rule 33. [2] Rule 33(a) "recognizes the traditional principle that the trial court has broad powers to grant a new trial if for any reason it concludes that the trial has resulted in a miscarriage of justice." Wright, King & Klein, *Federal Practice and Procedure*, Criminal 3d § 551.

Throughout the hearing before this Court, government counsel confused the issue by repeatedly reciting the standards applicable to motions for acquittal pursuant to Rule 29 or for a motion for new trial due to newly discovered evidence under section © of Rule 33. The burdens on the defendant in a Rule 29 motion or motion for new trial for newly discovered evidence are far higher and more onerous than the burden the defendant bears in a motion for new trial "in the interests of justice" under section (a) of Rule 33. Again, Wright's Treatise provides insight and guidance: "There is substantial authority supporting the proposition that motions for new trial on the ground of newly discovered evidence are not favored, and are to be granted with caution. *It is a mistake to extend this proposition to motions for a new trial because of trial errors or other grounds. Here the motion should be neither favored nor disfavored, and the question is only what the interest of justice requires."* Id, emphasis added. Moreover, a trial court may determine that the evidence is sufficient, under Rule 29, but the verdict was against the weight of the evidence and grant a new trial under Rule 33(a).[3] See, Wright, King & Klein, *Federal*

---

[2]While Mr. Munoz is not conceding his motion for new trial due to newly discovered evidence (Rule 33©), he admits that this motion is not as strong as the motion for new trial in the interests justice (Rule 33(a)). These two separate motions are governed by different standards and have different restraints. The Rule 33(a) motion for new trial in the interests of justice grants the greatest amount of discretion to the trial judge to grant a new trial. This is the motion that Mr. Munoz is addressing in this supplemental pleading.

[3] Again, during the hearing the prosecutor repeatedly invoked "Seago", i.e. United States v. Seago, 930 F. 2d 482, 488-89 (6th Cir. 1991). See, e.g. M.H. p. 18. Seago addresses a motion

*Practice and Procedure*, Criminal 3d, §§ 551 & 553. "On motion for judgement of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied. ¶ On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses. If the court reaches the conclusion that the verdict is contrary to the weight of the evidence and that a miscarriage of justice may have resulted, the verdict may be set aside and a new trial granted." Id, at § 553; see also Tibbs v. Florida, 457 U.S. 31, 38, 102 S.Ct. 2211, 2216 (1982); United States v. Huerta-Orozco, 272 F.3d 561, 565 (8th Cir. 2001); United States v. Ward, 274 F.3d 1320 (11th Cir. 2001).

In fact, it "has often been said that [the judge] sits as a thirteenth juror." United States v. Solorio, 337 F.3d 580 (6th Cir.) cert. denied 540 U.S. 1063 (2003). As the Eighth Circuit put it, "a court considering a new trial motion is free to evaluate the evidence and credibility of witnesses." United States v. Hilliard, 392 F.3d 981 (9th Cir. 2004) *citing* Huerta-Orozco, 272 F.3d at 565; *see also* United States v. Espinoza, 300 F.3d 981, 983 (8th Cir. 2002).[4]

_____

for new trial for newly discovered evidence. Seago held that ineffective assistance of counsel cannot usually be raised in a motion for new trial due to newly discovered evidence because the evidence of ineffectiveness is usually known to the defendant at the time of trial and not discovered later. Also, Seago's statement that only evidence that is not cumulative or impeaching will be considered only applies to a motion for new trial due to newly discovered evidence. Here, we are addressing the motion for new trial in the interests of justice – not the motion for new trial for newly discovered evidence.

[4]At trial at the close of evidence this Court questioned whether "I have to believe the governments' witnesses at this point, and not believe the defendant, when there was a direct conflict in their testimony?" (R.T. 179). This should have been a red flag to defense counsel to file not simply a Rule 29 motion to but also a Rule 33(a) motion to grant a new trial on the grounds that the verdict was contrary to the weight of the evidence. He did not. Failure to file a

In short, this Court can and should sit as a thirteenth juror when ruling on the instant motion. The Court's duty is to ensure that the jury did not return a verdict that resulted in a miscarriage of justice. The remedy is not a free pass. Mr. Munoz, if granted a new trial, will have to run the gauntlet again and face the possibility of conviction a second time. Here, there are several grounds for granting a motion for new trial "in the intense of justice" under Rule 33(a): 1) the verdict was contrary to the weight of the evidence; 2) defendant's counsel was ineffective by failing to investigate the case, call witnesses, file critical motions and effectively cross examine Tagaban; and, 3) Mr. Munoz was tried by a jury that contained no Hispanics or Latinos.

## II.
## A CLOSE CASE

Throughout all participants have agreed that the instant case is a close case. (M.H. 114-115, 126, 129). In the denial of the Rule 29, this Court stated:

> "The critical disputed fact at trial was whether Defendant Munoz knew that a package which he admitted to placing in interstate commerce contained methamphetamine. This disputed fact was the subject of extensive contradictory testimony, principally by Government witness Jose Tagaban and Defendant Munoz himself. The Court, having observed the testimony of Mr. Tagaban and Mr. Munoz at trial, and having subsequently reviewed the transcript of that testimony, cannot conclude that no rational trier of fact could find Mr. Munoz guilty beyond a reasonable doubt. This conclusion, coupled with the legal constraint that, in considering the instant Rule 29 motion, the Court is precluded from assessing the credibility of the witnesses or substituting its judgment for that of the trial jury, leads inescapably to the conclusion that Defendant Munoz's instant motion must be **DENIED**." (Court Order Denying Rule 29 Motion, p. 4).

The prosecutor attempted to rely heavily on the testimony of the case agents who testified

---

Rule 33(a) motion for new trial, especially when invited by the court, constitutes ineffective assistant of counsel. <u>United States v. Hillard</u>, 392 F.3d 986-988 (8th Cir. 2004).

4

that Mr. Munoz had stated, post-arrest, that he knew the package contained some kind of drug. However, this Court noted, "after hearing the testimony at the trial from Mr. Munoz, who I thought did a great job on the stand for himself, I became convinced, you know, its possible that maybe the agents, the officers misunderstood a comment." (M.H.123).

At the time of the motion for new trial, this Court appeared to be laboring under the impression that it had to apply the very high standard applicable to Rule 29 motions for acquittals and refrain from taking into account credibility issues. The Court repeatedly asked if "it mattered" whether it viewed the case as very close or whether, in the Court's opinion, Mr. Munoz was credible. The answer is that it does matter very much. Under <u>Solorio</u>, <u>Huerta-Orozco</u>, and <u>Hilliard</u>, this Court can and should consider the credibility of the witnesses and the weight of the evidence when deciding upon a motion for new trial under Rule 33(a). If the case is close, if the defendant was credible, then the Court must first consider whether the verdict was contrary to the weight of the evidence. In addition, if the case is close, then anything which could have effected the outcome of the trial and which prior counsel failed to do, has resulted in prejudice to Mr. Munoz and he should therefore receive a new trial due to his prior counsel's ineffectiveness.

Moreover, this is the appropriate and best time for Mr. Munoz to raise these concerns. All of Mr. Munoz's concerns, including the claim of ineffective assistance of counsel, are properly brought via a Rule 33(a) motion. The Sixth Circuit has specifically held that ineffective assistance of counsel can be litigated as part and parcel of a Rule 33(a) motion for new trial "in the interests of justice". <u>United States v. Bass</u>, 460 F.3d 830, 838-839 (6th Cir. 2006) (denying defendant's motion in part due to failure of defendant to offer any evidence to support his

5

motion).

In addition, this is the best time for Mr. Munoz to raise this issue. He has the opportunity to put in the record evidence of the ineffectiveness and the court has held a hearing on this issue. Mr. Munoz is in custody. If prevented from raising his IAC claim now, he will have to wait for sentencing and the direct appeal before raising his ineffectiveness claim in a habeas petition pursuant to 28 U.S.C. § 2255. This will take, at a minimum, one year and possibly two. All this time he will be in custody – away from his family and unable to earn a living to support his two children.

This Court is also the best adjudicator of this motion. As the Sixth Circuit noted in Solorio, the district court is in the best position to weigh the evidence having heard the testimony and viewed the demeanor of the witnesses. Upon appeal, the Court of Appeals "*does not* sit as a 'thirteenth juror' to judge the credibility of witnesses . . . ." Solorio, 337 F.3d at 589, citing United States v. Ashworth, 836 F.2d 260, 266 (6th Cir. 1988). For all these reasons, now is the best time and the most appropriate time for Mr. Munoz to raise the issue of ineffective assistance of counsel within a motion for new trial.

### III.
### EVIDENCE ESTABLISHED AT THE HEARING

1. Bergman Promised and Failed to File Motion For New Trial

Gloria Munoz, Richard Munoz's sister and a senior juvenile probation officer, testified that she personally spoke with Mr. Bergman about filing a motion for change of venue. (M.H. 33). The first time she spoke personally with Mr. Bergman, she asked him to file the motion and he told her he was looking into it. (M.H. 33). The second time she spoke with Mr. Bergman she

6

asked if he had filed the motion to change venue. Mr. Bergman stated that he had filed the motion to change venue and that the judge had denied the motion. (M.H. 33, 63). The government offered no evidence to rebut or challenge this evidence. Thus, the state of the record now is that the defendant and his family requested that Mr. Bergman file a motion to change venue. He did not. He then told the defendant's family that the judge had denied the motion. This did not happen. There is no evidence that the refusal to file the motion was based on strategy. Indeed there is no strategic reason for refusing to file such a motion.

2. <u>Bergman Failed To Investigate the Case and Call Witnesses</u>

This Court took judicial notice of the fact that Mr. Bergman hired no investigator. (M.H. 98-99). Gloria Munoz testified that she was never interviewed by Mr. Berman. (M.H. 34-35). Ms. Munoz offered to locate witnesses to be interviewed, but Mr. Bergman refused to talk to the potential witnesses or subpoena them to trial. (M.H. 34-36). He did not even take down the names and phone numbers of the potential witnesses. He refused to even interview potential witnesses. (M.H. 34-36). Such a refusal to interview witnesses is not a tactical decision but rather a refusal to perform one of the basic functions of defense counsel.

Tony Alcaraz testified at the hearing and demonstrated that his testimony was far more helpful than his affidavit. In addition to corroborating Richard Munoz's testimony that no one was selling drugs at Tagaban's family bar-b-Que's (M.H. 82), Tony Alcaraz demonstrated that it is possible to have been a good friend of Tagaban's and ***not*** know that he was involved in drug dealing. (M.H. 86). Mr. Alcaraz had worked with Tagaban for ***fifteen*** years and had been to Tagaban's home on more than one occasion. (M.H. 78-79). Yet, he had no inkling that Tagaban was involved in selling drugs. (M.H. 86). In addition, Mr. Alcaraz laid the foundation for the

7

photograph of Tagaban's home – a modest three bedroom home. (M.H. 80-81). Given that

Tagaban had worked for the IID for over sixteen years and made good money with benefits, there

was nothing suspicious about him owning a three bedroom home. Moreover, there was no

evidence of "unexplained wealth". (M.H. 83-84). This testimony would have undercut and

perhaps eliminated the government's argument that Mr. Munoz had to have known that Tagaban

was dealing drugs and that he coveted Tagaban's lifestyle (since there was nothing grandiose

about his lifestyle).

Most important was a new affidavit submitted at the hearing from Jose Leano, an

investigator with the Federal Public Defender's office for the Southern District of California.

Mr. Leano interviewed his former client, George McCay. (C.R. 139, App. B attached herein).

Neither Mr. Munoz nor counsel were present during this interview – it was conducted by Mr.

McCay's former counsel and his former investigator. Mr. McCay told his counsel and

investigator that he "distinctly remembers both Jose Tagaban and Richard Munoz. He met them

both when he was initially held in custody at the Imperial County Jail in El Centro, California."

(C.R. 139; App. B). Mr. McCay recalled "Mr. Tagaban telling him that Mr. Munoz was

innocent. In fact, Mr. Tagaban told Mr. McCay that he was going to testify on behalf of Mr.

Munoz and testify that Mr. Munoz had no idea what was 'going on.'" (C.R. 139, App. B).

Almost a year later, Mr. McCay recalled details about the charges against Mr. Munoz, "including

that one day when Mr. Tagaban was sick, he asked Mr. Munoz to pick up money from the

Western Union on his (Tagaban's) behalf and that Mr. Munoz did not know the money had

anything to do with drugs." (C.R. 139, App. B). Such recollection of detail, which is consistent

with the facts of the case, corroborates Mr. McCay's statement. This is evidence of a prior

inconsistent statement by Tagaban regarding Mr. Munoz's knowledge of the drugs in the Fed. Ex. box. Tagaban's prior inconsistent statement made to Mr. McCay is also consistent with Tagaban's post arrest statement. In both these statements, Tagaban concedes that Mr. Munoz performed certain favors for him, yet he did not know that these favors involved drugs.

### 3. Bergman Failed to Address the Lack of Representation of Hispanics on the Jury Pool

Ms. Munoz also testified that Mr. Bergman admitted that he had concerns about Mr. Munoz receiving a fair trial in the Eastern District of Tennessee where the jury pools lack people of Hispanic background. (M.H. 66-68). While Ms. Munoz was offended and obviously deeply disturbed by the comments about race, Mr. Bergman came right out and acknowledged that Mr. Munoz would have received a fairer trial in Southern California. (M.H. 66-68). Yet he failed to do anything to counter this potential problem.

**IV.**

**THIS COURT SHOULD GRANT A NEW TRIAL UNDER RULE 33(a) IN THE "INTERESTS OF JUSTICE.**

Rule 33(a) allows this Court to grant a new trial when it is in the "interests of justice". There are virtually no limitations on the factors this Court can consider when granting a motion for new trial. Mr. Munoz moves for a new trial for three reasons, which the Court can consider in combination: 1) the verdict was contrary to the weight of the evidence; 2) Mr. Munoz's counsel was ineffective; and 3) Mr. Munoz was tried by a jury which was not from his community and which did not include any Hispanic persons.

A. The Verdict Was Contrary To The Weight Of The Evidence.

A standard basis for granting a new trial is that the verdict is against the weight of the

9

evidence. The Court is entitled, and indeed required, to weigh the evidence including the credibility of witnesses. Tibbs v. Florida, 457 U.S. 31, 38, 102 S.Ct. 2211, 2216 (1982); United States v. Solorio, 337 F.3d 580 (6th Cir.) cert. denied 540 U.S. 1063 (2003); Untied States v. Huerta-Orozco, 272 F.3d 561, 565 (8th Cir. 2001); United States v. Ward, 274 F.3d 1320 (11th Cir. 2001). Here, this Court is not required to "believe" Tagaban over Mr. Munoz. In fact, this Court can consider the credibility of Munoz and find that the weight of the evidence, based on the credibility of the two key witnesses, was in Mr. Munoz's favor and grant a new trial.

As the Court noted before, Mr. Munoz and Tagaban were really the only two witnesses who could directly testify regarding Mr. Munoz's knowledge of the contents of the Fed. Ex. package. Tagaban had an incredible incentive to testify falsely, i.e., his hope to receive a sentence below twenty years. Moreover, the evidence revealed that Tagaban had been dealing drugs for years and had a previous drug conviction as well as a domestic violence conviction. Finally, while defense counsel failed to adequately cross-examine Tagaban's on his prior inconsistent statement, this Court can consider the testimony of Tagaban that at the time of his post-arrest statement he did not "include the detail" of Mr. Munoz's "knowledge" that drugs were in the package. Thus, these "details" came out after the motive to fabricate came into existence, after the government offered a deal to reduce his sentence in exchange for his testimony against Richard Munoz. The testimony of Tagaban is simply incredible – especially considering Mr. Munoz's background and reputation in the community. Thus, the verdict, based on Tagaban's testimony, was against the weight of the evidence and a new trial should be granted.

10

B.  Trial Counsel Was Ineffective

Ineffective assistance of counsel, if proven,  is a proper grounds for granting a motion for new trial pursuant to Rule 33(a).  See United States v. Bass, 460 F.3d 830, 838-839 (6th Cir. 2006) (denying defendant's motion in part due to failure of defendant to offer any evidence to support his motion).  The applicable standard is the two prong Strickland analysis: prior counsel's performance was deficient and that deficiency prejudiced the defense in a manner that deprived the defendant of a fair trial.  Strickland v. Washington, 446 U.S. 668, 104 S.Ct. 2052 (1984).   The first prong requires the defendant to prove that his trial counsel's representation "fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688, 104 S.Ct. 2052.   The second Strickland prong requires the defendant  to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [his trial] would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694, 104 S.Ct. 2052.  Bergman was ineffective in the following ways – all of which prejudiced Mr. Munoz.[5]

1.  Failure to Move For A Change of Venue

Failure to make appropriate motions or interject well-grounded objections constitutes deficient performance under Strickland and the Sixth Amendment. Howard v. Bouchard, 405 F.3d 459, 480-481 (6th Cir. 2005) (counsel's failure to file pre-trial motion to suppress eye-witness identifications "fell below reasonable professional standard"); see also Gravely v. Mills, 87 F.3d 779, 785 (6th Cir. 1996) and Hughes v. United States, 258 F.3d 453 (6th Cir. 2001).  In

---

[5]/ This discussion contains new research not presented in the first motion.  Counsel has attempted to avoid duplication.

fact, the failure to advise defendant of a venue defense to the charges has been held to be ineffective assistance of counsel. <u>Brown v. Butler</u>, 811 F.2d 938, 942 (5th Cir. 1987).

Here, prior counsel failed to move to transfer the case to the Southern District of California despite a specific request. Rule 21(b) provides, "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." "'The purpose of the discretion vested in the judge by Rule 21(b) was to give proper consideration to the convenience of parties and witnesses.'" <u>United States v. United States District Court for the Eastern District of Tennessee</u>, 209 F.2d 575 (6th Cir. 1954) quoting <u>Shurin v. United States</u>, 164 F.2d 566, 570 (4th Cir. 1948). Venue was proper in Southern California since all of Mr. Munoz's conduct occurred there. <em>See</em> <u>United States v. Williams</u>, 274 F.3d 1079, 1083 (6th Cir. 2001) <em>quoting</em> <u>United States v. Scaife</u>, 749 F.2d 338, 346 (6th Cir. 1984).

The Supreme Court has long found it important that a defendant is tried in his home community:

> "[W]e do not wish to be understood as approving the practice of indicting citizens of distant states in the courts of this District, where an indictment will lie in the state of the domicile of such person, . . . . to require a citizen to undertake a long journey across the continent to face his accusers and to incur the expense of taking his witnesses, and of employing counsel in a distant city, involves a serious hardship, to which he ought not to be subjected if the case can be tried in a court of his own jurisdiction."

<u>Hyde v. Shine</u>, 199 U.S. 62, 78, 25 S.Ct. 760, 762 (1905). This strong policy in favor of trying a defendant in his domicile is now incorporated into Rule 21(b).[6]

---

[6] The government's convenience and expense is ***not*** a factor to be considered in a motion to change value. <u>Minnesota Min. & Mfg. Co. V. Platt</u>, 345 F.2d 681 (7th Cir.) vacated as moot, 382 U.S. 456 (1966); <u>United States v. Gruberg</u>, 493 F. Supp. 234 (D.C.N.Y. 1979). "The

The Supreme Court has outlined ten factors that should be considered by a trial court when considering a Rule 21(b) motion to transfer a case to another district court. A district court must consider: (1) the defendant's location; (2) the location of possible witnesses; (3) the location of events giving rise to the proceeding; (4) the location of relevant documents and records; (5) disruption of defendant's business unless the case is transferred; (6) the expense to the parties; (7) the location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer. Platt v. Minnesota Mining & Manufacturing, Co., 376 U.S. 240, 243-44, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964). The district court has the authority and obligation to strike a balance and decide which factors seem to be of greatest importance in a case. United States v. Stephenson, 895 F.2d 867, 875 (2nd Cir. 1990).

A quick look at these factors shows that all or almost all of these factors favored transfer of Mr. Munoz's case to the Southern District of California. All of Mr. Munoz's conduct occurred in the Southern District of California in the small town of El Centro. Moreover, since both Mr. Munoz and Tagaban are from this area, all the character witnesses for Mr. Munoz and the impeachment witnesses against Tagaban reside in El Centro. All the investigation of this case was conducted in the Southern District of California. Even the records of Tagaban's prior convictions can be located in Imperial County (which is in the Southern District of California). Witnesses who could have impeached Tagaban on the claim of drug sales at Tagaban's house during parties attended by Mr. Munoz could have been subpoenaed mid-trial if the trial were held

government-employee witnesses, like the government lawyers, have nationwide responsibility and are equipped to operate away from home with minimal disruption of their official business." United States v. Benjamin, 623 F.Supp. 1204, 1213 (D.C.D.C. 1985).

13

in San Diego or El Centro. However, it is difficult, if not impossible, to conduct such mid-trial investigation from a distance of 2000 miles. By the time the case was tried in Tennessee, Mr. Munoz was the only defendant. Thus, the inconvenience to the government in transferring the case would have been minimal. Finally, the jury pool would have included a greater percent of Hispanic people. Mr. Munoz is Mexican-American. He was born in the United States but both of his parents were born and raised in Mexico. He has a Hispanic appearance and a Mexican last name. He would have had a fair representation of Hispanics on the jury if tried in Southern California. In El Centro, California, Hispanics make up 74.6% of the population. (App. 34). In California generally, Hispanics make up 39.5% of the population. (App. 34). In Tennessee, only 3% of the population is Hispanic – less than the national average of 14.4%. (App. 37). In Chattanooga, Tennessee the percentage of the population which is Hispanic is even lower – 2.1%. (App. 31) The percentages of Hispanic peoples in Bradley and Hamilton Counties is 3.0% and 2.4% respectively. (App. 26, 28).

Thus, the motion to transfer the case to Southern California, which trial counsel failed to make, was a meritorious motion. His failure to make that motion, in the face of a specific request, constitutes ineffective assistance of counsel

2. Failure to Investigate And Call Favorable Witnesses

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691, 104 S.Ct. 205 The duty to investigate derives from counsel's basic function, which is " 'to make the adversarial testing process work in the particular case.' " Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (quoting Strickland, 466

14

U.S. at 690, 104 S.Ct. 2052).  The Sixth Circuit has repeatedly found that a defense counsel's failure to investigate the case and call favorable witnesses constitutes ineffective assistance of counsel.  Tucker v. Prelesnik, 181 F.3d 747 (6th Cir. 1999) (finding counsel ineffective for failing to investigate the victim/witness in assault case and cross-examining this witness on the medical records which revealed numerous contradictory statements); see also Carter v. Bell, 218 F.3d 581 (6th Cir. 2000);  Rickman v. Bell, 131 F.3d 1150 (6th Cir. 1997) cert. denied 118 S.Ct. 1827 (1998); Groseclose v. Bell, 130 F.3d 1161 (6th Cir. 1997) cert. denied 118 S.Ct. 1826 (1998); see also, cases cited in motion for new trial filed May 8, 2007, at pp. 11-13.

Thus, it is not enough to simply review the materials presented by the government.  Such conduct would not satisfy the requirement of an "advocate" in an "adversarial testing process". Rather, defense counsel has an obligation to investigate all witnesses who may have information concerning the defendant's guilt or innocence.  See Bryant v. Scott, 28 F.3d 1411, 1419 (5th Cir.1994) (citing Henderson v. Sargent, 926 F.2d 706, 711 (8th Cir.1991)). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." Roe v. Flores-Ortega, 528 U.S. 470, 481, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); accord Clinkscale, 375 F.3d at 443.  A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in Combs, 205 F.3d at 288). For example, a decision not to call a witness cannot be an objectively reasonable decision if the attorney has failed to interview and investigate that witness.  Towns v. Smith, 395 F.3d 251, 259 (6th Cir. 2005).

Courts have not hesitated to find ineffective assistance in violation of the Sixth

Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client.  In Wiggins v. Smith, the Supreme Court granted the petition for a writ of habeas corpus because defendant's "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." 539 U.S. 510, 527-28, 123 S.Ct. 2527 (2003).  An "unreasonable juncture" is prior to completion of the investigation.  As the Sixth Circuit has held: "Where counsel fails to investigate and interview promising witnesses, and therefore 'ha[s] no reason to believe they would not be valuable in securing [defendant's] release,' counsel's inaction constitutes negligence, not trial strategy." Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir.1992) (quoting United States ex rel. Cosey v. Wolff, 727 F.2d 656, 658 n. 3 (7th Cir.1984) ). *See also* White v. McAninich, 235 F.3d 988, 996 (6th Cir. 200) ("the more thorough the investigation, the more deference the trial strategy receives, while strategic decisions made after incomplete investigations receive less . . ."); Blackburn v. Foltz, 828 F.2d 1177, 1183 (6th Cir.1987).

Here, prior counsel utterly failed to conduct any investigation.  He never hired an investigator.  He did not research Tagaban's prior convictions.  He did not interview any witnesses even when Gloria Munoz offered to round up prospective witnesses.  Thus, not only did he fail to conduct investigation, he rebuffed and refused offers to assist and invitations from Mr. Munoz's family.  Under the above cited cases, this failure to conduct any investigation or interview any witnesses in a case that hinged on the credibility of Richard Munoz and Tagaban cannot be justified as a "reasonable strategic choice".

The government's argument that Mr. Bergman may not have investigated because Mr.

16

Munoz did not want him to discover prejudicial evidence, i.e. "turn over any rocks", is specious.

The Sixth Circuit has held that a "purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his options and make a reasonable choice between them'" Towns, 395 F.3d at 258, citing Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991).

Moreover we know that an investigator could have found the favorable evidence because after trial an investigator found favorable witnesses and evidence:

> Geroge McCay – to impeach Tagaban with Tagaban's prior inconsistent statement that Richard Munoz was innocent and did not know that the package contained;
>
> Gloria Munoz – to corroborate testimony of Richard Munoz on paying back Tagaban's loan and as a character witness;
>
> Tony Alcaraz – to corroborate testimony of Richard Munoz that there were no drugs at Tagaban's parties, never saw Aaron George and to testify to Richard Munoz's character for truthfulness and law abiding character.  Would also impeach Tagaban on reputation for lack of truthfulness;
>
> Gina Aguilar – to corroborate Richard Munoz's testimony about paying back the loan from Tagaban, and that there were no drugs at any parties at Tagaban's house, and testify as a character witness;
>
> Rosa Tagaban – to impeach her husband's testimony that there were drugs sold at her house or that someone named Aaron George was at her house selling drugs;
>
> Gil Caldera – to testify that Mr. Munoz has a reputation for truthfulness and that Tagaban's reputation for truthfulness is not as good; and,
>
> Prior probation reports – to show Tagaban's pattern of always blaming someone else when he gets caught committing a crime –even someone he has victimized.

Unfortunately, prior counsel let the entire defense rest on the shoulders of Mr. Munoz.

This was an untenable trial strategy.  As the Sixth Circuit has repeatedly recognized, evidence that corroborates the testimony of the defendant is essential in a criminal case. For example, in Stewart, supra, 468 F.3d at 357-358, the Sixth Circuit found ineffective assistance of counsel

when trial counsel only presented one alibi witness. The <u>Stewart</u> Court rejected the idea that the witness was cumulative finding that an additional two witnesses on the alibi would have "added a great deal of substance and credibility to [defendant's] alibi." <u>Id</u>. *citing* <u>Montgomery v. Petersen</u>, 846 F.2d 407, 411-15 (7th Cir.1988); <u>Crisp v. Duckworth</u>, 743 F.2d 580, 585 (7th Cir.1984) (finding that "[h]aving independent witnesses corroborate a defendant's story may be essential" and "testimony of additional witnesses cannot automatically be categorized as cumulative"); *see also,* <u>Clinkscale</u>, <u>supra</u>, 373 F.3d at 445. Thus, in the instant case, trial counsel's failure to investigate and call corroborating, impeachment and character witnesses, as well as producing evidence that could impeach Tagaban, when the case rested on a credibility contest between Tagaban and Mr. Munoz, constitutes deficient performance.

3. <u>Failure to Effectively Cross Examine Tagaban</u>

In a case that came down to a credibility contest between Richard Munoz and Tagaban, prior counsel totally missed a golden opportunity to land a serious blow to Tagaban's credibility. The failure to adequately cross-examine a key witness against the defendant is ineffective assistance of counsel. <u>White v. McAninch</u>, 235 F.3d 988 (6th Cir. 2000); <u>Tucker v. Prelesnik</u>, 181 F.3d 747 (6th Cir. 1999); <u>Gorseclose v. Bell</u>, 130 F.3d 1161 (6th Cir 1997) cert. denied 118 Sct. 1826 (1998); and <u>Blackburn v. Foltz</u>, 828 F.2d 1177 (6th Cir. 1987). In the instant case, on re-direct, Tagaban testified as follows:

"Q.    . . What you said to them that day, before you ever had a plea agreement with the government, was that pretty much what you said here today?
A.    No, sir.
Q.    Well. What was different about it?
A.    I didn't tell them – I didn't tell them anything about Mr. Munoz.
Q.    You didn't?  Are you sure about that?
A.    Well, I told them what he had done, but I didn't go into any specific detail.

18

> Q. I see. But you did say that Munoz had taken Fed Ex packages for you, didn't you?
>
> A. Yes, sir. Yes, sir.
>
> Q. You said that he'd done it on two occasions, correct?
>
> A. Correct." (R.T. 87).

The "detail" that Tagaban had failed to state during his post-arrest statement was the gravamen of the case, i.e whether Richard Munoz knew what was inside the Fed Ex packages. According to the report of Tagaban's post arrest statement which was disclosed by the government before trial, Tagaban never told the agents that Richard Munoz knew what was in the Fed Ex package. (App. 23). He never told the agents that he, Tagaban, had placed the methamphetamine in the package in front of Richard Munoz. (App. 23). The statement that Tagaban made post-arrest, prior to his plea agreement with the government and his desperate attempt to get a sentence lower than 20 years, was entirely consistent with Richard Munoz's testimony and the statement of George McCay. (App. B). Defense counsel could have and should have cross-examined Tagaban on each line in his post-arrest statement. Prior Counsel could have crossed Tagaban on the fact that he was interrogated for an hour and a half – plenty of time for details. And, prior counsel could have driven home how Tagaban's statements changed when he knew that testimony against Richard Munoz could get him a lower sentence. None of this was done. Government counsel attempted to defend this failure by speculating that Bergman was "saving" this evidence for argument. This speculation flies in the face of fact. The fact is that Bergman never argued that Tagaban made a prior inconsistent statement in closing.

In sum, it appears that prior counsel was indeed deficient in failing to make a crucial motion to change venue, completely failing to investigate the case and call critical witnesses, and in failing to effectively impeach Tagaban on his prior inconsistent post-arrest statement. This

court must make an independent judicial evaluation of counsel's performance and not be swayed by the defendant's possible acquiescence to counsel's performance at trial, Ward v. United States, 995 F.2d 1317, 1322 (6th Cir.1993), and it must ensure counsel acted reasonably under all circumstances. Sims v. Livesay, 970 F.2d 1575, 1580-81 (6th Cir.1992). Moreover, the Court should view the errors in combination to determine the extent of the prejudicial effect. Blackburn v. Flotz, 828 F.2d 1177, 1184 & 1186 (6th Cir. 1987).

4. Prejudice

In order to show prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's errors, the fact finder would have had a reasonable doubt about his guilt." Combs, 205 F.3d at 290 "A reasonable probability is a probability sufficient to undermine confidence in the trial's outcome." Foster, 9 F.3d at 726. In determining whether there was prejudice, this Court "must consider the totality of the evidence before the judge or jury" including the credibility of witnesses and weight of the evidence. Strickland, 466 U.S. at 695, 104 S.Ct. 2052. The Court need *not* find "that a reasonable jury could not have reached the same verdict if counsel had performed effectively." Richey v. Mitchell, 395 F.3d 660, 687 (6th Cir. 2005) (*quoting* Johnson v. Scott, 68 F.3d 106, 109 n. 4 (5th Cir.1995).) Nor must defendant "show that he could not have been convicted. Instead, he need only undermine our confidence in the trial's outcome." Richey, at 687, *citing* Foster, 9 F.3d at 726. Indeed, Richey explains how the presentation of corroborating or expert testimony can tip the delicate weighing of the credibility of witnesses. Richey, supra. Evidence which corroborates a defendant's testimony also undermines and, to some degree, impeaches the government witnesses. The Richey Court also explained that the presence of other evidence of the defendant's guilt does not

20

necessarily defeat a finding of prejudice. Id., *see also* Combs, 205 F.3d at 290; Baylor v. Estelle, 94 F.3d 1321, 1324-25 (9th Cir.1996); United States v. Tarricone, 996 F.2d 1414, 1419 (2d Cir.1993).

As this Court noted in ruling on the motion for acquittal, the central issue in the case was whether Mr. Munoz knew the packages contained methamphetamine and the answer to that question was the subject of conflicting evidence from Mr. Munoz and Tagaban . Here, this Court should view the evidence at trial as if the additional witnesses and evidence presented herein had been presented at trial. Evidence corroborating his testimony and evidence contradicting Tagaban's version of events would have effected the outcome. The evidence presented along with this motion undermines any confidence in the verdict and is sufficient to establish a probability that, with such evidence, the outcome would have been different. Consequently, a new trial is required due to the fact that Mr. Munoz's right to effective assistance of counsel was violated.

C. Mr. Munoz Was Tried By A Jury On Which There Were No Hispanics

As evidenced by Gloria Munoz's testimony, Bergman had concerns about the possibility that Richard Munoz would not receive a fair trial in the Eastern District of Tennessee. Bergman made oblique references to whether he, a white male, would receive a fair trial in El Centro where a large percentage of the population is Hispanic. (M.H. 66-68). Then, Bergman stated that Mr. Munoz's one character witness would have better if he was white. (M.H. 67). Again, the government presented nothing to dispute or contradict this testimony.

At trial, Bergman was obviously concerned about the racial make-up of the jury but he could not figure out how to address this concern legally. First, he objected based on Batson but

then, in the same breadth, admitted, "I don't think Mr. Winnie excused any Hispanic people from the jury, because there were none." (R.T. II 52). Then he simply objected to the jury venire "while it's composed of people in the community, there are no Hispanics. My client is Hispanic. And in order to get a jury of his peers, there should be a representative sampling of Hispanic people on the jury panel." (M.H. II 53).[7] The end result was a miscarriage of justice – a jury which contained none of Mr. Munoz's peers. For this reason, he believes a new trial would be in the "interests of justice".

**V.**

**CONCLUSION**

In sum, there is more than sufficient reason for this Court to grant a new trial in the interests of justice under Rule 33(a). First, the verdict was contrary to the weight of the evidence, keeping in mind that this Court is free to evaluate the credibility of witnesses and weight of the evidence. Second, prior counsel was ineffective. He refused to investigate the case, repeatedly declining invitations to interview witnesses. He failed to subpoena witnesses on Mr. Munoz's behalf who could have corroborated his testimony, testified to his good character, and testified to Tagaban's reputation as less that forthright. Witnesses could have been called to impeach

---

[7]/ The proper vehicle to contest the composition of the jury is a motion to dismiss the indictment made pursuant to the Jury Selection and Service Act, 28 U.S.C. §§ 1861 et. seq. This Act requires the jury to be "selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Thus, any concerns about whether the jury pools were reflective of the community should have been raised in a pre-trial motion to dismiss the indictment. Moreover, the Sixth Amendment requires that a criminal defendant be indicted and tried by an impartial jury drawn from a representative cross section of the community. <u>Taylor v. Louisiana</u>, 419 U.S. 522, 530 (1975). Again, a complaint about the composition of the jury pools must be raised in a pre-trial motion. Bergman's failure to do so can be considered another instance of ineffectiveness.

22

Tagaban on his claim that he sold drugs in front of Mr. Munoz at the parties at his house with Aaron George. Indeed, Tagaban's own wife would have testified that she never met an Aaron George and no one was selling drugs in her home. A witness could have been called to testify to a prior inconsistent statement made by Tagaban, i.e. that Mr. Munoz was innocent and did not know what was "going on". Bergman was also ineffective in failing to move to change venue to Southern California, failing to file a motion for new trial, and failing to attack, pre-trial, the composition of the jury. In Southern California, Mr. Munoz would have been tried by a jury with representation from Hispanics . Also, it would have been easier to Mr. Munoz to subpoena witnesses and even to investigate and call impeachment witnesses mid-trial if surprised by government witnesses. Finally, Bergman was ineffective in his cross-examination of Tagaban, failing completely to cross-examine him on a prior inconsistent statement made post arrest. The third basis for granting a new trial is that Mr. Munoz was tried by a jury with no Hispanics. Mr. Munoz offers this as a separate and independent basis for a new trial. Finally, this Court should consider all these basis for a new trial in combination to determine if it is in the interests of justice to grant Mr. Munoz a new trial. Upon such consideration this court should grant Mr. Munoz a new trial.

Respectfully submitted,

S/ Martha M. Hall

Dated: August 17, 2007      **MARTHA M. HALL**
CA. Bar No. 138012
DiIORIO & HALL, APC
964 Fifth Avenue, Suite 214
San Diego, California 92101
(619) 544-1451
Attorneys for Defendant **Munoz**

23

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2007, a copy of the foregoing Motions for New Trial was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties imdicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

　　　　　　　　　　　　　　　　　  /s/ Martha M. Hall　　　　　
　　　　　　　　　　　　　　　　　Martha M. Hall
　　　　　　　　　　　　　　　　　DiIorio & Hall, APC
　　　　　　　　　　　　　　　　　California Bar No. 138012
　　　　　　　　　　　　　　　　　964 Fifth Avenue, Suite 214
　　　　　　　　　　　　　　　　　San Diego, California 92101
　　　　　　　　　　　　　　　　　Telephone: (619) 544-1451
　　　　　　　　　　　　　　　　　Facsimile: (619) 544-1473
　　　　　　　　　　　　　　　　　Email: Martha_DiIoriohall@yahoo.com
　　　　　　　　　　　　　　　　　Attorney for Defendant **Munoz**