UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 4:06-cr-23-2 |
| v. | ) | |
| | ) | Judge Mattice |
| RICHARD MUNOZ | ) | |

## MEMORANDUM AND ORDER

Before the Court is the Motion for a New Trial of Defendant Richard Munoz [Court Doc. 133]. In that motion, Mr. Munoz asserts that: "1) it is in the interests of justice to grant a new trial since his first trial was marred by ineffective assistance of counsel; and 2) newly discovered evidence warrants the granting of a new trial." For the reasons explained below, Mr. Munoz's instant motion will be **GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case was initiated by a three-count indictment [Court Doc. 1] in which six individual defendants were charged. They were: Jose Luis Tagaban, Richard Munoz, Aaron George, Jacki McBride, Carol Ann O'Neal and Ronnie Lee Young. The charges were: (1) conspiracy to distribute 500 grams or more of methamphetamine (Count One, naming all defendants), (2) possession with intent to distribute methamphetamine (Count Two, naming O'Neal and Young), and (3) distribution of 500 grams or more of methamphetamine (Count Three, naming Tagaban and Munoz).

The underlying scheme and activities which gave rise to the charges, as revealed in the various sealed Plea Agreements and Presentence Investigative Reports in the case, were as follows. George and McBride, residents of Arizona, would transport or otherwise furnish narcotics for resale to residents of Tennessee, among them O'Neal and Young. Upon being arrested, George revealed that his source for the narcotics was Tagaban, a resident of Imperial, California.

Acting on this information, law enforcement authorities devised a sting operation, designed to apprehend Tagaban, which involved intercepting a shipment of narcotics from Tagaban to George via FedEx. During this operation, Mr. Munoz was observed retrieving monies which had been wired from George to Tagaban as payment for the narcotics and, on another occasion, delivering a package to a FedEx office. This package was later determined to have contained methamphetamine.

Upon being apprehended, all defendants except Mr. Munoz confessed[1] and agreed to cooperate with the authorities. Mr. Munoz, on the other hand, proceeded to trial, which began on November 7, 2006, in Winchester, Tennessee. At his jury trial, Mr. Munoz was convicted on Counts One and Three of the Indictment. (Verdict Form, Court Doc. 77.)

Subsequent to his conviction, Mr. Munoz filed a Motion for Judgment of Acquittal of Defendant Richard Munoz [Court Doc. 61] pursuant to Federal Rule of Criminal Procedure 29. The Court denied Mr. Munoz's Rule 29 motion, concluding that:

> The critical disputed fact at trial was whether Defendant Munoz knew that a package which he admitted to placing in interstate commerce contained methamphetamine. This disputed fact

---

[1] As discussed in footnote 5 below, whether Mr. Munoz's statements to law enforcement authorities upon being arrested constituted a confession was a disputed issue at his trial.

> was the subject of extensive contradictory testimony, principally by Government witness Jose Tagaban and Defendant Munoz himself. The Court, having observed the testimony of Mr. Tagaban and Mr. Munoz at trial, and having subsequently reviewed the transcript of that testimony, cannot conclude that no rational trier of fact could find Mr. Munoz guilty beyond a reasonable doubt. This conclusion, coupled with the legal constraint that, in considering the instant Rule 29 motion, the Court is precluded from assessing the credibility of the witnesses or substituting its judgment for that of the trial jury, leads inescapably to the conclusion that Defendant Munoz's instant motion must be **DENIED**.

(Memorandum and Order, Court Doc. 93, p. 4.)

Subsequently, on May 8, 2007, following a change of counsel and over three months after the denial of Mr. Munoz's Motion for Judgment of Acquittal, Mr. Munoz filed the instant motion. In it, Mr. Munoz contends that he is entitled to a new trial because "1) it is in the interests of justice to grant a new trial since his first trial was marred by ineffective assistance of counsel; and 2) newly discovered evidence warrants the granting of a new trial." (Def.'s Motions for New Trial, Court Doc. 133, p. 1.) In response, the Government argues that Mr. Munoz's motion is untimely unless based on newly discovered evidence, that the motion should be denied because motions for a new trial based on newly discovered evidence are generally disfavored and, in any event, ineffective assistance of counsel is not "newly discovered evidence" within the meaning of Fed. R. Crim. P. 33. (Response of the United States to Defendant's Motion for a New Trial, Court Doc. 135; Government's Post-Hearing Response to Defendant's Motion for New Trial, Court Doc. 145, p. 7-8.)

## II. STANDARD OF REVIEW

Rule 33 of the Federal Rules of Criminal Procedure states, in pertinent part:

> **(a) Defendant's motion.** Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires....
>
> **(b) Time to File.**
>
> **(1) Newly Discovered Evidence.** Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty....
>
> **(2) Other Grounds.** Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33.

As noted above, the Court previously denied Mr. Munoz's Motion for Judgment of Acquittal, filed pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (Court Doc. 93.) While both Rule 29 and Rule 33 of the Federal Criminal Rules deal with post-trial procedures, and while motions under these rules are often filed concurrently and are sometimes combined, the two rules are governed by very different standards. As noted by a leading commentator, the perspective from which the court must approach a Rule 33 motion differs significantly from that for a Rule 29 motion:

> On a motion for judgment of acquittal, the court is required to approach the evidence from a standpoint most favorable to the government, and to assume the truth of the evidence offered by the prosecution. If on this basis there is substantial evidence justifying an inference of guilt, the motion for acquittal must be denied.
>
> On a motion for new trial, however, the power of the court is much broader. It may weigh the evidence and consider the credibility of witnesses.

3 Charles Alan Wright, Nancy King & Susan Klein, Federal Practice and Procedure § 553 (3d ed. 2004). It has often been said that the Court sits as a "thirteenth juror" when deciding on a Rule 33 motion involving conflicting evidence, as is the case with the instant motion. *See*, *e.g.*, *United States v. Ashworth,* 836 F. 2d 260, 266 (6th Cir. 1988).

While there is substantial authority supporting the proposition that motions for new trial on the grounds of newly discovered evidence are not favored and are to be granted with caution, *see*, *e.g.*, *United States v. Lanier*, 238 F.3d 425, 2000 WL 1720917, at *3 (6th Cir. Nov. 6, 2000); *United States v. O'Dell*, 805 F. 2d 637, 640 (6th Cir. 1986), *cert. denied*, 484 U.S. 859 (1987), "[i]t is a mistake to extend this proposition to motions for new trial because of trial errors and other grounds. Here the motion should be neither favored nor disfavored, and the question is only what the interest of justice requires." 3 Wright, *et al.*, *supra* at § 551; *see also United States v. Scroggins*, 379 F.3d 233, 253 (5th Cir. 2004), *vacated on other grounds*, 543 U.S. 1112 (2005) (motions for new trial based on interest of justice are not subjected to more rigorous standard of new trial motions based on newly discovered evidence). In either case, however, the defendant bears the burden of showing that a new trial should be granted. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991).

### III. ANALYSIS

Mr. Munoz originally argued that the interests of justice required a new trial because: (1) his first trial was marred by ineffective assistance of counsel and (2) newly discovered evidence has revealed the need for a new trial. As the parties' respective arguments have

evolved and been refined in the course of the briefing, Mr. Munoz has conceded that his stronger argument is interests of justice based on ineffective assistance of counsel. (Supplemental Points and Authorities in Support of Motion for New Trial, Court Doc. 142, p. 2, fn. 2; Defendant's Reply to Government's Response to Motion for New Trial, Court Doc. 149, p. 5). The Court agrees, and will confine its analysis to this argument.

### A. Timeliness of Mr. Munoz's Motion

Before turning to the merits of the instant motion, the Court must address whether it was timely filed. Although a Rule 33 motion must ordinarily be filed within seven days of the jury verdict, *see* Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty."), the seven-day rule may be flexibly applied. *See* Fed. R. Crim. P. 45(b)(1) ("When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made: . . . (B) after the time expires if the party failed to act because of excusable neglect.").

The former version of Rule 33 did not permit extensions of time. *See*, *e.g.*, *Carlisle v. United States*, 517 U.S. 416, 420 (1996). However, "Rule 33 was amended in 2005 to allow the district court discretion to grant a defendant an extension of time to move for a new trial." *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 475 n.7 (6th Cir. 2007). Accordingly, the seven-day time limit is no longer jurisdictional. *See Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam) (denominating Rule 33 a "claim processing rule[ ]").

The 2005 Commentary to Rule 33 states: "[U]nder Rule 45(b)(1)(B), if for some reason the defendant fails to file the underlying motion for new trial within the specified time, the court may nonetheless consider that untimely underlying motion if the court determines that the failure to file it on time was the result of excusable neglect." In *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993), the Supreme Court set out five factors for courts to balance in determining the whether a missed deadline was the product of excusable neglect:

(1) the danger of prejudice to the nonmoving party,
(2) the length of the delay and its potential impact on judicial proceedings,
(3) the reason for the delay,
(4) whether the delay was within the reasonable control of the moving party, and
(5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer*, 507 U.S. at 395).

With regard to the first factor, the Government does not assert that it was prejudiced by Mr. Munoz's delay in filing the instant motion. The Government appears to have been in the same position to respond to the instant motion when it was filed in May 2007 as it would have been if filed within seven days of the jury verdict. Accordingly, the Court finds that the first factor weighs in favor of finding excusable neglect.

The second factor must be evaluated in the specific context of this case. After a two day trial, during which the Mr. Munoz was represented by appointed counsel, the jury returned a guilty verdict on November 8, 2006. (Court Doc. 77.) Mr. Munoz's trial counsel moved to withdraw on January 4, 2007 and his withdrawal was granted on February 22, 2007. (Court Docs. 86, 109.) Five days later, Mr. Munoz's current counsel requested

leave to file the instant motion on the basis that his trial counsel was ineffective. (Court Doc. 110.)

The instant motion was certainly filed in excess of the seven day time limit outlined in Rule 33. The delay was not excessive, however, considering that Mr. Munoz was represented by the allegedly ineffective counsel for the vast majority of that time. Once Mr. Munoz's current counsel took control of the case, the delay in filing the instant motion was minimal.

The Court cannot ascertain any significant impact on the judicial proceedings caused by the delay in this case. As noted above, the Government has not alleged any prejudice as a result of the delay. Because trial had already been completed, procedurally all that remains is Mr. Munoz's sentencing hearing. Accordingly, the second factor weighs in favor of finding excusable neglect.

As to the third factor, Mr. Munoz argues that the failure to file a motion for new trial within seven days was "an understandable and excusable omission" because the basis for such motion is ineffective assistance on the part of the trial counsel. (Court Doc. 133 at 9.) It is axiomatic that trial counsel would not file a Rule 33 motion based on ineffective assistance. As noted in one prominent legal publication, "[t]here may well be cases in which a new trial should be granted in the interests of justice, but . . . [trial counsel] may be reluctant to raise it, as in the case of ineffective assistance of counsel." 3 Wright *et al.*, *supra* § 551 n.11 (quoting Daniel A. Rezneck, *The New Federal Rules of Criminal Procedure*, 54 Geo. L.J. 1276, 1316 (1966)).

Although the Sixth Circuit has not addressed whether ineffective assistance of counsel can constitute excusable neglect, other circuits have recognized the possibility.

*See, e.g., United States v. Clark*, 193 F.3d 845, 847 (5th Cir. 1999) (finding that ineffective assistance of counsel is sufficient to prove excusable neglect); *United States v. Smith*, 2008 WL 55996, *2 (10th Cir. Jan. 4, 2008) (noting that ineffective assistance of counsel may qualify as excusable neglect pursuant to Rule 45(b)(1)(B)). The Court finds that the third factor weighs in favor of finding excusable neglect.

In evaluating the fourth factor, courts ordinarily focus on the conduct of the attorney and whether it was excusable. *See Pioneer*, 507 U.S. at 396. The client is then typically held responsible for their attorney's actions. *Id*. Courts have been more protective of a criminal defendant's rights, however, and have been more flexible with regard to attributing an attorney's neglect to their client in the criminal context. *See Stutson v. United States*, 516 U.S. 193, 196 (1996) (per curiam) (noting that the court's interest in judicial efficiency and finality must accommodate a criminal defendant's rights).

In this case, nothing in the record suggests that Mr. Munoz's trial counsel could not have filed a Rule 33 motion within seven days of the jury's verdict, which weighs against finding excusable neglect. However, because Mr. Munoz was still represented by his trial counsel at that point, the attorney who was empowered to file the Rule 33 motion within seven days of the jury verdict is the same attorney who Mr. Munoz now claims was ineffective. As noted above, it is easy to see why trial counsel did not file the instant motion. Accordingly, although the Court finds that the fourth factor weighs against Mr. Munoz, it does not afford this factor substantial weight.

As to the fifth factor, the Court finds that the delay in filing Mr. Munoz's motion was not due to bad faith. In fact, Mr. Munoz's current counsel moved for leave to file the instant

motion only five days after the order substituting counsel was entered. Accordingly, the fifth factor weighs in favor of finding excusable neglect.

Ultimately, the determination of excusable neglect is "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. Considering all of the above, the Court finds that Mr. Munoz's failure to file his motion for a new trial within seven days of the jury verdict was the result of excusable neglect. Accordingly, the Court finds that Mr. Munoz's motion for a new trial based on ineffective assistance of counsel is timely and will dispose of the motion on its merits.

B. **Whether Mr. Munoz was Denied Effective Assistance of Counsel**

Courts have recognized that ineffective assistance of counsel may be asserted as a basis for a new trial under Rule 33. *See, e.g.*, *United States v. Allen*, 2006 WL 1897899, at *1 (E. D. Mich. July 11, 2006); *United States v. Box*, 144 F.Supp.2d 892, 901 (W.D. Mich. 2001). The standard for judging an assertion of ineffective assistance of counsel in the context of Rule 33 is identical to the standard employed in the context of a habeas corpus petition – the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Allen*, 2006 WL 1897899, at *1. Under *Strickland*, in order to obtain relief, a convicted defendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness according to prevailing norms of the legal profession, and (2) counsel's deficient performance was prejudicial to the defense. 466 U.S. at 687-88, 692.

The burden is generally on a defendant to prove both the deficient performance and the prejudice prongs of the *Strickland* test. *Stewart v. Wolfenbarger*, 468 F.3d 338, 350

(6th Cir. 2006). In evaluating Mr. Munoz's instant claim–that in his trial, he was denied effective assistance of counsel–the Court will address each prong in turn.

        1.      <u>Whether the Performance of Mr. Munoz's Trial Counsel Fell Below an Objective Standard of Reasonableness</u>

The first prong of the *Strickland* test relates to counsel's professional competence. In order to demonstrate a constitutionally cognizable deficiency, a defendant must show that his attorney's performance fell below an "objective standard of reasonableness." *Rickman v. Bell*, 131 F.3d 1150, 1154-55 (6th Cir. 1997), *cert. denied*, 523 U.S. 1133 (1998). While there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, *id*., claims relating to counsel's allegedly inadequate preparation have traditionally proven to be a fertile ground for successful challenges based on ineffective assistance. *See*, *e.g.*, *White v. McAninch,* 235 F.3d 988, 997-98 (6th Cir. 2000); *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000).

Before beginning this analysis, the Court must note a peculiar aspect of this case which it believes to be highly pertinent to Mr. Munoz's instant motion. The case was charged, in Count One of the Indictment, as a conspiracy naming six individuals who were from three different federal judicial districts. Messrs. Tagaban and Munoz resided, and committed all overt acts related to the charged conspiracy, in the Southern District of California; Mr. George and Ms. McBride resided in the District of Arizona, and committed overt acts there and in the Eastern District of Tennessee; and Ms. O'Neal and Mr. Young resided in, and committed all overt acts related to the conspiracy, in the Eastern District of Tennessee.

Accordingly, venue for this alleged criminal conspiracy properly lay in any one of the three federal judicial districts in which the alleged conspiracy was begun, continued, or completed. 18 U.S.C. §3237(a). The above-captioned case arguably could have been brought against the six defendants in any of these three judicial districts. *See, e.g., United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001), *cert. denied*, 534 U.S. 1149 (2002) (venue is proper in the district in which a co-conspirator committed any overt act in furtherance of the conspiracy, even if the defendant never entered the district in which the indictment was brought). Under these circumstances, it seems unlikely that a compelling argument for change of venue could have been asserted by any defendant at any time early in the case.

Shortly before the commencement of Mr. Munoz's trial,[2] however, all other defendants notified the Government of their intention to plead guilty and, presumably, of their willingness to testify as a Government witness at Mr. Munoz's trial.[3] By that time, the court-imposed deadline for motions to be filed – October 10, 2006 – had expired.

At this late date in the proceedings, with Mr. Munoz the only remaining defendant, it should have suddenly become apparent that the fundamental character of the case had changed dramatically. Rather than being a case about a transcontinental drug distribution conspiracy, it should have become apparent that the sole issue at trial would be what role, if any, Mr. Munoz, had played in that conspiracy. Mr. Munoz's only alleged role in the

---

[2] The Court's docket sheet reflects that the Court was notified of the intention of Mr. George, the last of the other defendants to plead guilty, on October 26, 2006, (*see* Court Doc. 55), only 12 days before the start of Mr. Munoz's trial and one day before the expiration of the plea deadline in the case. (*See* Court Doc. 35).

[3] Mr. George and Mr. Tagaban did, in fact, testify on behalf of the Government at trial.

conspiracy arose out of his connection to, and his dealings with, Mr. Tagaban.  Under these circumstances, competent defense counsel should have been able to anticipate that the principal, if not only, issue at trial would be the credibility of Mr. Munoz, presumably versus that of Mr. Tagaban, in describing that role.

At that point, and even if it had not been so clear previously, it became imperative that Mr. Munoz's defense counsel devote intense efforts to preparing for a credibility contest between Mr. Munoz and Mr. Tagaban.  Such efforts may reasonably have included interviewing individuals who might have been able to serve as character witnesses and to testify as to the respective reputations for veracity of Mr. Munoz and Mr. Tagaban.  *See United States v. Polsinelli*, 649 F.2d 793, 798 (10th Cir. 1981) (when the key issue is the jury's credibility determination between the main government witness and the defendant, "character witnesses . . . assume[] a position of greater importance than would be true in the ordinary case.")

To provide constitutionally sufficient representation, defense counsel is required to reasonably investigate the facts of the case or reasonably determine that an investigation is not necessary.  *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997).  Failure to conduct a reasonable investigation is deficient performance. *Strickland*, 466 U.S. at 691; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

"Where counsel fails to investigate and interview promising witnesses, and therefore has no reason to believe they would not be valuable in securing defendant's release, counsel's inaction constitutes negligence." *Workman v. Tate*, 957 F.2d 1339, 1345 (6th Cir.1992) (internal citations and quotations omitted).  There is evidence in the record that

a number of family members and other individuals within the community in Southern California would have been willing to serve as character witnesses for Mr. Munoz at trial. (Transcript of June 21, 2007 evidentiary hearing, pp. 34-36, 51-52.) The record is devoid of evidence showing that Mr. Munoz's trial counsel interviewed these witnesses or conducted other investigation as to the possible value of their trial testimony.

To be sure, Mr. Munoz's court-appointed defense counsel confronted a number of formidable obstacles in carrying out his duties in this case. Mr. Munoz was arrested and detained in the Southern District of California on July 27, 2006. At a August 11, 2006 detention hearing in San Diego, a $300,000 appearance bond was set, and Mr. Munoz was released from custody in California on August 25, 2006. It was not until September 11, 2006, however, that Mr. Munoz was arraigned before a Magistrate Judge in the Eastern District of Tennessee and his trial counsel was appointed. (Minutes of Arraignment before the Honorable Susan K. Lee, Court Doc. 34.) Mr. Munoz's trial counsel resided in and conducted business in the Eastern District of Tennessee while Mr. Munoz remained in California on bond. As far as appears from the record, Mr. Munoz's September 11, 2006 arraignment was his one and only face-to-face meeting with his attorney until the eve of trial.

In addition, and probably as much of a problem for Mr. Munoz's trial counsel as the lack of proximity to his client, was counsel's distance from anyone who might have been available to serve as a character witness for Mr. Munoz at trial. While parties to a federal criminal case enjoy nationwide service of process for trial subpoenas, Fed. R. Crim. P. 17(e)(1), it would be difficult to understate the readily apparent practical and logistical

limitations attendant to this tool when considering the distance between the Eastern District of Tennessee and the Southern District of California.

Nevertheless, under the peculiar circumstances of this case, as they continued to unfold right up to the eve of Mr. Munoz's trial, court-appointed defense counsel was confronted with only two viable options which might have permitted him to effectively represent Mr. Munoz's interests. The first such option would have been to request, beyond the court-imposed motions deadline, a lengthy continuance of the trial date and to procure the necessary funds which might enable him to conduct the extraordinarily expensive and time-consuming transcontinental pretrial discovery which would permit him to adequately prepare for what would almost inevitably be a battle to support Mr. Munoz's credibility after he took the stand in his own defense at trial. The second such option, equally unpalatable but perhaps more expedient under all the circumstances, would have been to ask the Court for permission to file out-of-time and support a motion, pursuant to Fed. R. Crim. P. 21, to transfer venue for Mr. Munoz's trial to the Southern District of California, where Mr. Munoz and most, if not all, of the witnesses available and willing to testify as to the crucial disputed issue in the case, were located. Mr. Munoz's counsel did neither.[4]

The Court can readily understand and sympathize with the quandary that Mr. Munoz's trial defense counsel must have suddenly and unexpectedly found himself in as

---

[4] Of course, if his decisions in this regard were part of a calculated trial strategy, Mr. Munoz's counsel actions or inactions might not constitute ineffective assistance of counsel. *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). The record is devoid, however, of any evidence to suggest that the failure to interview witnesses in the Southern District of California or to seek to have the case transferred there was part of a conscious trial strategy on the part of Mr. Munoz's counsel, and the Court cannot conceive of a reasonable trial strategy which would incorporate these features. *See O'Hara,* 24 F.3d at 828 ("[A] failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted.").

the events of the case unfolded and as the trial date rapidly approached, as well as the very difficult choices and actions which those circumstances would have required counsel to take to protect his client's interests. These difficulties, however, cannot excuse Mr. Munoz's trial counsel from confronting the situation at hand and taking the appropriate action necessary to vindicate Mr. Munoz's Sixth Amendment right to effective assistance of counsel.

Reluctantly, the Court must conclude that under the admittedly difficult circumstances of this case, counsel's actions, or lack thereof, fell below the objective standard of reasonableness that is to be expected of effective trial counsel in similar situations. Accordingly, the Court finds that Mr. Munoz has satisfied his burden of proof with regard to the first prong of the *Strickland* test.

> 2. Whether There Exists a Reasonable Probability That, But For Trial Counsel's Deficient Performance, the Result of Mr. Munoz's Trial Would Have Been Different

The second part of the *Strickland* test deals with prejudice to the defendant. In other words, in order to demonstrate that his counsel's deficient performance deprived the defendant of a constitutional right, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Court must therefore determine whether Mr. Munoz was prejudiced by his counsel's failure either to conduct extensive transcontinental pretrial discovery of character witnesses in the Southern District of California or, alternatively, to request that the Court transfer venue of Mr. Munoz's trial to the Southern District of California. Initially, the Court would again observe, as it did when it denied Mr. Munoz's Motion for a Judgment of

Acquittal pursuant to Fed R. Crim. P. 29, that "[t]he critical disputed fact at trial was whether Defendant Munoz knew that a package which he admitted to placing in interstate commerce contained methamphetamine. This disputed fact was the subject of extensive contradictory testimony, principally by Government witness Jose Tagaban and Defendant Munoz himself." (Memorandum and Order, Court Doc. 93, p.4).

The testimony at trial given by Mssrs. Munoz and Tagaban was irreconcilably inconsistent as to whether Mr. Munoz had knowledge of the contents of the FedEx package. As it previously observed at the hearing on the instant motion, the Court found Mr. Munoz's trial testimony in his own defense to be both credible and compelling. (*See* Transcript of June 21, 2007 evidentiary hearing, p. 123, ll.14-16, "after hearing the testimony at the trial from Mr. Munoz who I thought did a great job on the stand for himself..."). Similarly, it found Mr. Tagaban's trial testimony regarding the events which transpired in the cab of his employer's truck on July 20, 2006 to be credible.

The introduction of extrinsic evidence of reliability – including, but not limited to, character witnesses – is a tried and true method of forensic persuasion. *See Michelson v. United States*, 335 U.S. 469, 476 (1948) (a defendant "may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged."); *United States v. Cylkouski*, 556 F.2d 799, 802 (6th Cir. 1977) (noting that a defendant may call witnesses for the sole purpose of testifying as to his general good character). Given that the testimony of both Messrs. Tagaban and Munoz appeared to the Court to be credible, and the irreconcilable nature of their testimony as to the crucial issue in this case, any extrinsic evidence regarding the relative credibility of Messrs. Tagaban and Munoz would have been

particularly compelling to the trier of fact. *See United States v. Cox*, 159 F. App'x 654, 657 (6th Cir. 2005) (noting that extrinsic evidence was "particularly probative of the credibility issue" when the defendant's knowledge was the main contested fact at trial). "The testimony of character witnesses . . . assume[s] a position of even greater importance than would be true in the ordinary case" when the defendant testifies and his credibility, weighed against that of the key prosecution witness, is the key dispute of fact in the case. *United States v. Polsinelli*, 649 F.2d 793, 198 (10th Cir. 1981). Accordingly, in this case, had either party been able to tip the balance of such a contest of credibility in favor of their side, they would very likely have prevailed in the case.[5] *See Velarde v. Shulsen*, 757 F.2d 1093, 1095 (10th Cir. 1985) (noting that where the case "comes down to a one-on-one situation, *i.e.*, the word of the defendant against the word of the key prosecution witness" the defendant's credibility is takes on great significance).

For this reason, the Court finds that there is a reasonable probability that Mr. Munoz's counsel's insufficient performance affected the outcome of the case. Accordingly, the Court finds that on the instant motion, Mr. Munoz has borne his burden of establishing the second, or so-called "prejudice" prong of the *Strickland* test.

---

[5] The Court notes the Government's argument that the testimony of Tennessee Bureau of Investigation (hereinafter "TBI") Narcotics Investigator Heath Frizzell and TBI Special Agent Mark Delaney regarding the statements made by Mr. Munoz while in custody at the offices of the U. S. Drug Enforcement Agency in Imperial, California shortly after his arrest on the evening of July 27, 2006 provides such extrinsic corroborative evidence of the reliability of Mr. Tagaban's version of events. As the Court suggested at the June 21, 2007 hearing (Transcript of June 21, 2007 evidentiary hearing, p. 123, ll. 11-17), however, and after hearing the trial testimony of Messrs. Frizzell, Delaney and Munoz, the Court is of the opinion that the TBI Agents' interpretation of Mr. Munoz's statements in response to their questions could have easily been in error. In any event, and for purposes of the instant motion, the Government's reliance on the testimony of Agents Frizzell and Delaney serves only to reinforce the Court's conviction that Mr. Munoz's counsel's failure to conduct a proper investigation of possible extrinsic evidence to corroborate Mr. Munoz's testimony substantially prejudiced Mr. Munoz's chances for a verdict of not guilty.

**IV. CONCLUSION**

For the reasons explained above, Mr. Munoz's Motion for a New Trial [Court Doc. 133] is **GRANTED**. The Jury's Verdict [Court Doc. 77] is **SET ASIDE**. The Court **ORDERS** that a new trial of Mr. Munoz commence within the time frame established by 18 U.S.C. § 3161(e).

The Court will hold a scheduling conference for the purpose of establishing deadlines for the retrial on **Tuesday, March 10, 2009 at 3:00 p.m. EDT**. Defense counsel may participate by telephone.

SO ORDERED this 2nd day of March, 2009.

                                                     */s/Harry S. Mattice, Jr.*
                                                     HARRY S. MATTICE, JR.
                                           UNITED STATES DISTRICT JUDGE